# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY ESPINOSA, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner of Social Security, <br><br> Defendant. | 1:07-cv-00127 GSA <br><br> ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT <br> (Document 13) |

## **BACKGROUND**

Plaintiff Anthony Espinosa ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On October 17, 2007, the Honorable Lawrence J. O'Neill reassigned the case to the undersigned for all purposes.

**FACTS AND PRIOR PROCEEDINGS[2]**

In December 2003, Plaintiff protectively filed applications for DIB and SSI benefits.  AR 75-77, 218.  He alleged disability since January 14, 2003, due to injuries to his neck, back, shoulders and legs.  AR 82-89.  After being denied both initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 55-59, 61-66, 67.  On April 4, 2006, ALJ Michael Haubner held a hearing.  AR 223-261.  ALJ Haubner denied benefits on June 21, 2006.  AR 16-28.  On November 18, 2006, the Appeals Council denied Plaintiff's request for review.  AR 5-8.

Hearing Testimony

On April 4, 2006, ALJ Haubner held a hearing in Fresno, California.  AR 223-261.  Plaintiff appeared with his non-attorney representative, Anthony Gonzalez.  AR 225.  Vocational expert ("VE") Judith Najarian also appeared and testified.  AR 225, 245-255.

Plaintiff was born on June 9, 1959.  AR 231.  He has a GED, but no other formal education or training.  AR 231-232.

Plaintiff testified that he drinks six beers a week.  AR 232.  He has been at that level for two years.  AR 232.  Before that, he was drinking less.  AR 232.  In March of 2004, he was not drinking everyday.  AR 232.  He would drink a lot at one time.  AR 232.  He would drink about ten beers once every two weeks.  AR 232.  He now drinks about two beers in one day.  AR 233.  He did not get help to stop with his binge drinking.  AR 233.  He did it on his own.  AR 233.

Plaintiff testified that he last worked on January 14, 2003.  AR 233.  He was working for Riverside Construction as a welder.  AR 233.  He stopped working because he got in an automobile accident.  AR 233.  A doctor in Texas told him to quit.  AR 233.

Plaintiff testified that he was welding in 1993, 1998 and 2001.  AR 234.  In 2002, he worked for in-home supportive services taking care of his mom for a year.  AR 234.  Plaintiff's representative agreed that it was not "SGA."  AR 234.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

Plaintiff testified that he lives with his brother and his wife. AR 235. They have three grandchildren living in the home who are 18, 16, and 14 years old. AR 235. His brother and sister-in-law are retired. AR 235. The kids are old enough to take care of themselves. AR 235.

Plaintiff testified that he brushes his own teeth, shaves himself and combs his hair. AR 235. He bathes or showers himself and puts on his own clothes. AR 236. He cooks or prepares meals four times a week. AR 236. He also does simple meal preparation once a day. AR 236. He does not clean up after himself or do dishes everyday. AR 236. He does dishes once a week. AR 237. He has a washer and dryer at home. AR 237. He does not do laundry. AR 237. He did laundry before his injuries. AR 237.

Plaintiff testified that he does not have his own room. AR 237. He does not make his bed or change the sheets on his bed. AR 237. He does not take out the trash. AR 237. He does not do any yard work. AR 237. He does very little cleaning of the kitchen or bathrooms. AR 238. He wipes the kitchen counter down twice a week. AR 238. He does not empty any of the trash. AR 238. He does not dust, sweep or vacuum. AR 238. He goes shopping or to the market once a week. AR 238. He does not go to church. AR 238. He goes out to eat twice a month. AR 238-239. He does not belong to any groups or organizations that he regularly attends. AR 239. He does not have any hobbies or pets. AR 239.

Plaintiff testified that he watches TV and sleeps "a lot." AR 239. On an average day, he watches four hours of TV and reads newspapers, magazines or books for two hours. AR 239. He does not do any kind of exercises. AR 239. He talks on the telephone for an hour a day. AR 239-240.

Plaintiff testified that he does not have a savings or a checking account. AR 240. His brother and sister-in-law pay the bills. AR 240. He has not taken any courses or classes since January of 2003. AR 240.

Plaintiff testified that he lies down twice a day for an hour and a half to two hours each time. AR 240. He can lift and carry five pounds with both hands. AR 241. He can be on his feet for 15 minutes to a half hour before he has to sit down or rest. AR 241. He can sit for 15 minutes to a half hour before he has to get up and stretch. AR 241. He can walk half of a block.

AR 241. He has pain in his lower back, neck and the middle of his back. AR 241. The pain radiates down to both of his legs. AR 241-242. The pain is worse in his back. AR 242. It is constant. AR 242. He would rate his back pain between eight and nine on a scale of one to ten. AR 242. He has not been to the emergency room for pain in the three years prior to the hearing. AR 242. He would rate his neck pain between eight nine on a scale of one to ten. AR 242. He would put the leg pain at eight. AR 242. He takes pain medication and has his brother or sister-in-law rub his back twice a week. AR 242-243.

Plaintiff testified that he does not have a driver's license. AR 243. He last had a valid driver's license in 2000. AR 243. He has not driven since 2000 without a license. AR 243. He gets rides from people. AR 243.

Plaintiff testified that he gets regular medical care once a month. AR 243. He sees Dr. Kerr. AR 243. He is not seeing a chiropractor. AR 243-244. He saw a chiropractor for "about four months." AR 244. He quit going because the chiropractor "wasn't doing any good." AR 244. The chiropractor stopped and Plaintiff was released. AR 244.

Plaintiff testified that he does not have difficulty concentrating or paying attention to things because of pain or fatigue. AR 244.

VE Judith Najarian also testified. AR 245. The VE identified Plaintiff's past relevant work as a welder in the DOT as heavy and skilled, SVP 6. AR 245. The VE testified that the exhibit she reviewed addressed lifting between 50 and 100 pounds frequently, which was consistent with the DOT classification. AR 245. The skills performed in Plaintiff's past relevant work were knowledge of doing the weld, knowledge of operating the welder, familiarity with layout or blueprints or diagrams, knowledge of cleaning a weld, the grinding, cutting plates or shapes and using the machine shop tools. AR 246. The VE testified that the skills would transfer to other welding or soldering, brazing-type jobs at the medium and light exertional levels, but not sedentary. AR 246.

For all the hypotheticals, the ALJ asked the VE to assume a person of the same age, education, language and work experience background as the Plaintiff. AR 246. For the first hypothetical, the ALJ asked the VE to assume a person who could lift and carry 50 pounds

occasionally, 25 pounds frequently, could stand and walk about six hours out of eight, could sit about six hours out of eight and was unlimited at push and pull. AR 246-247. This person also could climb ladders, ropes and scaffolds occasionally, ramps and stairs frequently, could stoop and crouch occasionally, could reach overhead occasionally and should avoid hyperextension of the neck on a frequent basis, but was otherwise unlimited in reaching. AR 247. The VE testified that this person could not do Plaintiff's past relevant work. AR 247. This person could perform a DOT classification for solderer-assembler in the welding category. AR 247. It is medium, SVP, semi-skilled. AR 247. It would use past relevant work skills obtained by Plaintiff. AR 247. The VE testified that it meets the restrictions regarding the "climbing of ramps, the stooping, crouching, et cetera." AR 247. The VE also testified that there are six titles at the medium level where there is transferability and that meet the hypothetical with 9,800 jobs in California. AR 249. Under the second category, welders other, there are semi-skilled jobs in addition to the 9,800. AR 249. There are 7,138 jobs at the semi-skilled level in California with nine times those numbers in the United States. AR 250. At the skilled level, there would be 122,000 jobs in the United States. AR 251. For the solderer assembler jobs, there would be "89 national" jobs. AR 251.

The VE testified that there also would be some unskilled medium jobs. AR 252. There are 16,033 hand packing jobs in California at the medium level, unskilled. AR 252. There would be about nine times that for the U.S. AR 252.

For the second hypothetical, the ALJ asked the VE to assume a person who should avoid work that requires repeated bending or heavy lifting, could lift and carry 50 pounds occasionally, 25 pounds frequently, could stand and walk six hours out of eight with normal breaks, could sit without restriction, could "knee, squat, and stair climb," could use arms from waist to shoulder level on a frequent basis, could use arms from shoulder level to head infrequently and should avoid keeping the neck in one position for a prolonged period. AR 252. The VE testified that this person could not perform Plaintiff's past relevant work. AR 252-253. This person could still do the soldering positions with the same numbers. AR 253. The neck restriction would

1   eliminate some of the other welder jobs, reducing them by 75 percent. AR 253-254. It would
2   not reduce the hand packer job. AR 254.

3       For the third hypothetical, the ALJ asked the VE to assume a person who could lift and
4   carry five pounds, could stand 15 to 30 minutes at a time, could sit 15 to 30 minutes at a time,
5   could walk a half block and would need two unscheduled breaks per day of one and a half to two
6   hours for each break. AR 254-255. The VE testified that this person could not do Plaintiff's past
7   relevant work and could not do any other generally appearing work. AR 255.

8       Plaintiff also testified in response to questions from his non-attorney representative. AR
9   255. Plaintiff testified that he had worked in his life. AR 255. He first started working when he
10  was about eight or nine years old. AR 255. He worked continuously throughout his adult life.
11  AR 256. He last worked in 2003. AR 256. The automobile accident prevented him from going
12  back to work. AR 256. He injured his neck and his back. AR 256. He did not have surgery to
13  try to correct it. AR 256. He had a laminectomy preceding the accident. AR 256. He already
14  had some problems with his neck before the auto accident. AR 256-257. He has been receiving
15  medical care since the auto accident, primarily medications. AR 257. Plaintiff testified that he
16  sleeps during the day because the medications make him sleep. AR 257. They get him drowsy
17  and he "just can't stay awake." AR 257-258. He takes the medications everyday. AR 258. He
18  listed four medications that make him drowsy. AR 258.

19      Medical Evidence

20      On January 14, 2003, Plaintiff sought emergency treatment at Edinburg Regional Medical
21  Center in Texas. AR 115-123. Plaintiff was a passenger in the front seat of a car that was hit
22  from behind by another vehicle. AR 116. He complained of pain to his neck and lower back.
23  AR 116. He was diagnosed with myofascial cervical and lumbar strain and was prescribed
24  Advil/Tylenol for pain. AR 117. Lumbar spine x-rays revealed degenerative disc disease. AR
25  123. Cervical spine x-rays were normal. AR 123.

26      On January 17, 2003, James Morales, D.C., a chiropractor at the Accident & Rehab
27  Clinic at Cornerstone in Texas, diagnosed Plaintiff with cervical sprain/strain and lumbar
28  sprain/strain. AR 127. Plaintiff's cervical range of motion percentages fell between 76% and

86% of the norm. AR 129. His lumbar range of motion percentages fell between 68% and 90% of the norm. AR 129. Dr. Morales opined that Plaintiff was not able to work from January 17, 2003, to January 31, 2003. AR 127.

Plaintiff underwent a physical, orthopedic and neurological examination on February 27, 2003. AR 125. Extensive range of motion analysis was completed to determine an impairment of the lumbar and cervical spine. AR 125. Plaintiff reported a pain scale of 9 out of 10. AR 125. The provider prescribed electrical stimulation applied to the lumbar and cervical spine for pain control or modulation, moist heat therapy and deep tissue therapy. AR 125.

On March 3, 2003, Plaintiff sought treatment from Michelle Thomas, M.D. AR 148. Plaintiff reported that he could not sit for long periods. AR 148. After 5-10 minutes he is uncomfortable, with aching and sharp pain in his lower back to the back of his legs. AR 148. He has the same feeling in his upper back and neck. AR 148. Plaintiff also reported that his legs and arms fall asleep if he is sitting for a long time and he also is uncomfortable sleeping. AR 148. Dr. Thomas prescribed medication and indicated that Plaintiff should continue chiropractic care. AR 148.

On March 7, 2003, Plaintiff sought treatment from Dr. Thomas. AR 146. He reported that his pain medication was not working. AR 146. He reported problems sitting in one position for a long period of time. AR 14

On March 12, 2003, John H. Hokokian, D.C., a chiropractor at Fig Garden Accident & Injury Center in California, completed a progress report regarding Plaintiff. AR 132-135. Dr. Hokokian reported Plaintiff's updated diagnosis as acute, traumatic, cervical and thoracic sprain/strain, with lumbosacral sprain/strain, with brachial radicular neuralgia, with lumbosacral radicular neuralgia with cephalgia, resulting from a motor vehicle collision with other vehicles. AR 132. Plaintiff reported returning to Dr. Thomas for an evaluation and change of prescription medications. AR 132. Plaintiff was taking Celebrex and Flexeril to assist with the inflammation and pain in his neck and back. AR 132. He indicated that the medication had not "helped much." AR 132. Plaintiff complained of neck pain and stiffness with limited motion, headaches, tingling and weakness in the hands and fingers, pressure across the shoulders and the upper back,

low back pain and pain down the back of both legs to the ankles.  AR 133.  Dr. Hokokian indicated that he granted Plaintiff total temporary disability from February 14, 2003 through March 1, 2003, and additional total temporary disability from March 1, 2003, through April 7, 2003.  AR 134.

Dr. Hokokian opined that Plaintiff had made minimal improvement with symptoms and findings during his month of care.  AR 134.  His pain syndrome and exam findings were slow to improve.  AR 135.  While in the care of Dr. Hokokian, Plaintiff was prescribed ice packs for home use, a support belt for his lumbar spine, Vitamin C for tissue healing and a natural muscle relaxant.  AR 135.

On March 17, 2003, Plaintiff sought treatment from Dr. Thomas for pain.  AR 145.  Plaintiff's straight leg test was positive at 20 degrees each leg.  AR 145.  He had para spinal, upper back and lower back muscle tenderness.  AR 145.  Dr. Thomas diagnosed Plaintiff with myofascial dysfunction and prescribed Celebrex and Flexeril.  AR 145.

On March 21, 2203, Plaintiff sought treatment from Dr. Thomas for complaints of back pain.  AR 144.  Plaintiff reported that his neck and shoulders were not getting better with therapy.  AR 144.  He described poking pain down his legs to his foot when sitting and standing.  AR 144.  Dr. Thomas assessed Plaintiff with myofascial cervical/lumbar dysfunction with radiculopathy.  Plaintiff was prescribed Toradol, Vicodin and Bextra.  AR 144.  He was to stop Celebrex.  AR 144.  An MRI referral was completed.  AR 144.

On March 27, 2003, Plaintiff underwent an MRI of the lumbar spine.  AR 137-139.  Teresa Chan, M.D., of the Fresno Imaging Center, opined that Plaintiff had changes of left-sided discectomy at L5-S1.  AR 139.  Dr. Chan further opined that there appeared to be recurrent disc protrusion with surrounding inflammation/granulation tissue, which probably caused "some mass effect on the left S1 nerve root."  AR 139.  Plaintiff also had mild degenerative bulge at L2-3 without significant stenosis.  AR 139.

On March 27, 2003, Plaintiff also underwent an MRI of the cervical spine.  AR 140-141.  Dr. Chan opined that Plaintiff had mild degenerative change in the cervical spine, mild left neural foraminal stenosis at C4-5 and C5-6 levels due to bony hypertrophic change, and eccentric bulge

and marginal spurring at C6-7 toward the left associated with narrowing of the proximal left neural foramen. AR 141. Dr. Chan did not identify any significant central stenosis. AR 141.

On October 7, 2003, Michael M. Bronshvag, M.D., a Diplomate in Neurology and Internal Medicine, completed an evaluation of Plaintiff for an attorney. AR 149-151. Dr. Bronshvag interviewed and evaluated Plaintiff on September 30, 2003. AR 149. Plaintiff reported neck pain, pain radiating to both shoulders and up into the back of the head as well as low back pain since his vehicle accident. AR 149. He also reported episodic numbness of the arms and legs. AR 149. Plaintiff indicated that he had difficulty with sitting, standing and walking. AR 149. He reported that his chiropractic treatment made him worse. AR 149. Plaintiff felt that he could "maybe do lighter work," but was unable to return to welding. AR 149.

A medical review of Plaintiff's systems by Dr. Bronshvag was unremarkable. AR 149. Plaintiff denied emotional-neuropsychological difficulties, but reported problems with prolonged lying down, sitting, standing and walking and increased difficulties with climbing, lifting, bending, reaching, crouching, stooping and kneeling. AR 150. He described headache pain. AR 150. He also indicated that he had difficulty walking a block, climbing more than a few steps or lifting more than a few pounds. AR 150.

On physical examination, Plaintiff's neck range of motion was minimally limited, but caused discomfort. AR 150. Each shoulder could be fully abducted with discomfort. AR 150. His low back range of motion was modestly limited. AR 151. His hip rotation, straight leg raising and straight leg extension were not limited. AR 151. Dr. Bronshvag opined that the balance of the musculoskeletal examination was normal. AR 151.

Dr. Bronshvag further opined that Plaintiff had troubling ongoing neuromusculoskeletal symptoms, but the neurological examination reassured rather than alarmed. AR 151. Dr. Bronshvag did not have an opportunity to review Plaintiff's medical records, but opined that Plaintiff's neuromusculoskeletal examination did not preclude full-time, light work. AR 151. Dr. Bronshvag also advised ongoing "conservative medical care" to include "conservative

medication treatment plus appropriate physical therapy (emphasizing active, effortful, and exertional things)" as the "best way of improving [Plaintiff's] level of function." AR 151.

In March 2004, Plaintiff was admitted to the hospital for complaints of abdominal pain and rectal bleeding. AR 188-191. He underwent an esophagogastroduodenoscopy, which revealed moderate gastritis and duodenitis, and a colonoscopy, which revealed internal hemorrhoids. AR 191. Consulting and examining physicians indicated that Plaintiff had a history of chronic alcohol abuse and substance abuse. AR 189, 194.

On May 24, 2004, Troy Smith, M.D., a board certified orthopedic surgeon, completed a consultative orthopedic evaluation of Plaintiff. AR 153-157. Plaintiff complained of headaches and pain radiating to the upper back and down the arms to the hands. AR 153. He also complained of low back pain with pain radiating to the legs and stopping at the knees. AR 153. He reported that physical therapy and chiropractic treatment made him worse. AR 153. He also reported receiving three epidural injections, which only temporarily helped. AR 153. He was not taking any medication for his back. AR 153. He informed Dr. Smith that he smoked six to seven cigarettes per day and consumed six alcoholic beverages per week. AR 154.

On orthopedic examination, Plaintiff walked without evidence of a limp. AR 154. He had pain with rotation and lateral flexion of the neck bilaterally and tenderness of the trapezius muscles bilaterally. AR 154. He also had tenderness to percussion in the lumbosacral area of the spine and at the left sciatic notch area. AR 155. He could flex the lumbar spine to 60 degrees with pain and recovered with difficulty. AR 155. He had straight leg raising to 90 degrees bilaterally with pain. AR 155. Laseque's sign was positive bilaterally. AR 155. He had full range of motion of the shoulders without crepitation or pain. AR 155.

Dr. Smith diagnosed Plaintiff with degenerative lumbar disk disease, status post laminectomy and recurrent neck and back pain from a motor vehicle accident. AR 157. Dr. Smith opined that Plaintiff was unable to do work that required repeated bending or heavy lifting. AR 157. Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently. AR 157. He could stand and walk six hours out of an eight hour day with normal breaks. AR 157. He could sit without restriction and could kneel, squat and climb stairs. AR 157. Plaintiff also

could use his arms from the waist to the shoulder level on a frequent basis. AR 157. He could use the arms from the shoulder level to above his head on an infrequent basis. AR 157. He had to avoid keeping his neck in one position for a prolonged period of time. AR 157.

On June 22, 2004, James V. Glaser, M.D., completed a Physical Residual Functional Capacity Assessment form. AR 158-165. Dr. Glaser opined that Plaintiff could lift and/or carry 50 pounds occasionally, 25 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday and could sit about 6 hours in an 8-hour workday. AR 159. He could climb ramps and stairs frequently and climb a ladder, rope and scaffolds occasionally. AR 160. He frequently could balance, kneel, crouch and crawl. AR 160. He occasionally could stoop and crouch. AR 160. Dr. Smith further opined that Plaintiff was limited to occasional overhead reaching and should avoid hyperextension of his neck on a frequent basis, but otherwise was unlimited in reaching all directions. AR 161. Plaintiff had no visual, communicative or environmental limitations. AR 161-162. On November 1, 2004, stated agency physician Brian Ginsburg, M.D., reviewed and affirmed the assessment as written. AR 165.

ALJ's Findings

The ALJ determined that Plaintiff met the disability insured status requirement on his alleged disability onset date of January 14, 2003, but continued to meet those requirements only until December 31, 2005. AR 20. The ALJ also determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. AR 20. The ALJ found that Plaintiff had the severe impairments of degenerative disc disease and disc protrusion at L5-S1, disc bulging at L2-3, status post hemilaminotomy and diskectomy at L5-S1, mild degenerative disc disease/bulging at C4-7, and cervical and lumbar myofascial dysfunction with radiculopathy. AR 20-21. The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 21. The ALJ further found that Plaintiff had the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently. AR 21. He could sit about 6 hours in an 8-hour day and could stand and walk about 6 hours in an 8-hour day. AR 21. He had nonexertional limitations of no climbing of ladders, ropes or scaffolds, occasional

climbing of ramps or stairs, frequent balancing, kneeling or crawling, occasional stooping or crouching, occasional overhead reaching and avoiding frequent hypertension of the neck. AR 21-25. The ALJ concluded that Plaintiff's impairments precluded him from performing his past relevant work. AR 25-26. Considering Plaintiff's age, education, work experience and residual functional capacity, the ALJ found that Plaintiff had acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. AR 26-27. Therefore, the ALJ concluded that Plaintiff was not under a "disability." AR 27.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means more than a mere scintilla, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal quotation marks and citation omitted). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the correct legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42

U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(g), 416.920 (a)-(g) (2006). Applying the evaluation process in this case, the ALJ found that Plaintiff (1) has not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (degenerative disc disease and disc protrusion at L5-S1, disc bulging at L2-3, status post hemilaminotomy and diskectomy at L5-S1, mild degenerative disc disease/bulging at C4-7, and cervical and lumbar myofascial dysfunction with radiculopathy) based on the requirements in the Regulations (20 C.F.R. § 416.920(c) (2006)); (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in Appendix 1 to Subpart P of Part 404; (4) is not able to perform his past relevant work, but (5) has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. AR 20-26.

In this case, Plaintiff argues that (1) his residual functional capacity precludes the performance of jobs identified by the VE; and (2) the VE's testimony conflicts with the *Dictionary of Occupational Titles* ("DOT") and the ALJ failed to solicit an explanation for the conflict.

**DISCUSSION**

A.      Residual Functional Capacity to Perform Alternative Work

   1.      Testimony of Vocational Expert

Plaintiff first argues that, contrary to the ALJ's finding, he does not have the residual functional capacity to perform the alternative work of solderer-assembler, welder-assembler, gas

welder, arc welder, combination welder and hand packager due to his limitation to occasional overhead reaching. Plaintiff's Opening Brief, at p. 6. In relevant part, the ALJ found Plaintiff's non-exertional limitations to include only occasional overhead reaching, but no other reaching limitations. AR 21. In response to the first hypothetical, the VE testified that a person who could reach overhead occasionally and should avoid hyperextension of the neck on a frequent basis, but was otherwise unlimited in reaching could not perform Plaintiff's past relevant work. AR 246- 247. However, the VE testified that this person could perform a DOT classification for solderer-assembler in the welding category, which meets the restrictions regarding the "climbing of ramps, the stooping, crouching, et cetera." AR 247. The VE also testified that this person could perform semi-skilled welder positions and unskilled medium hand packing jobs. AR 249-252.

In addition, the VE testified that a person who should avoid work that requires repeated bending or heavy lifting, could lift and carry 50 pounds occasionally, 25 pounds frequently, could stand and walk six hours out of eight with normal breaks, could sit without restriction, could "knee, squat, and stair climb," could use arms from waist to shoulder level on a frequent basis, could use arms from shoulder level to head infrequently and should avoid keeping the neck in one position for a prolonged period could not perform Plaintiff's past relevant work. AR 252-253. However, this person could still do the soldering and hand packer positions along with a reduced number of the other welder jobs. AR 253-254.

2.   <u>Conflict Between VE Testimony and the DOT</u>

Plaintiff does not appear to challenge the ALJ's RFC. Instead, Plaintiff challenges the ALJ's determination that he can perform the alternative work identified by the VE because the DOT describes the hand packager occupation to require constant reaching and the remaining occupations to require frequent reaching. In short, Plaintiff argues that his limitation to occasional overhead reaching precludes him from performing the alternative work, which requires the ability to constantly/frequently reach in all directions.[3] He asserts that there is an

---

[3] Plaintiff cited and provided information to the Court regarding the following DOT positions: solderer-assembler, DOT No. 813.684-014; welder-assembler, COT No. 819.381-010; gas welder, DOT No. 811.482-010; arc welder, DOT No. 810.382-010; combination welder, DOT No. 819.384-010; and hand packager, DOT 920.587-

14

apparent conflict between the DOT and the VE's testimony and that the ALJ erred by deviating from the DOT and failing to elicit a reasonable explanation for the conflict between the DOT and the VE pursuant to Social Security Ruling 00-4p.

SSR 00-4p states that, generally, occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT.  Where there is an apparent conflict, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled.  *See* SSR 00-4p.  The ALJ may rely on the testimony of a VE over that of the DOT by determining that the explanation given by the VE is reasonable and provides a basis for doing so.  *Id.*

Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the [ Dictionary of Occupational Titles ] nor the [vocational expert] ... evidence automatically 'trumps' when there is a conflict."  *Massachi v. Astrue,* 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4p).  Thus, the ALJ must first determine whether a conflict exists.  If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT.  *Id.*

The Court is mindful of the recent decision in *Massachi v. Astrue*, where the Ninth Circuit determined that an ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT.  However, where there is no apparent conflict in the first instance, *Massachi v. Astrue* is not instructive and the ALJ's procedural failure to ask about any conflict may be considered "harmless" error.  *Massachi,* 486 F.3d at 1154 n. 19.

Here, the ALJ did not ask the vocational expert whether her testimony conflicted with the DOT and, if so, whether there was a reasonable explanation for the conflict.  However, when considering the hypothetical person who could occasionally reach overhead and should avoid hyperextension of the neck on a frequent basis, but otherwise was unlimited in reaching, the VE testified as follows:

> Q.      ....Could this person do the past relevant work the claimant did?

---

018.  The Commissioner does not dispute the identified DOT positions.

| | | |
|---|---|---|
| 1 | A. | No. |
| 2 | Q. | Could this person could [sic] other work as it generally appears?  First, let's start |
| 3 | | with any medium work.  Is there any medium work this person could do? |
| 4 | A. | Let me, let me look up some of the welding positions -- |
| 5 | Q. | Okay. |
| 6 | A. | With regard to the issues of climbing, and stooping, crouching, and reaching. |
| 7 | | Hold on.  As I'm going through I'll respond.  There is a DOT classification for |
| 8 | | solderer assembler.  It's in the welding category.  It's medium, SVP 4.  So, it's |
| 9 | | semi-skilled. |
| 10 | Q. | So, would use past relevant work skills that claimant obtained? |
| 11 | A. | It would, and it meets the restrictions regarding the climbing of ramps, the |
| 12 | | stooping, crouching, et cetera.  Let me, let me keep looking.  There is, okay, let |
| 13 | | me see, two, four, six, no. |

AR 247.

Although the ALJ did not expressly ask whether the positions identified were consistent with the DOT classifications, the VE's testimony demonstrates that she took into account the reaching restrictions at least when considering the DOT solderer-assembler position.  The VE also indicated that such a DOT classification meets the restrictions of the hypothetical, indicating it does not conflict with the DOT.  Inherent in the remainder of the VE's testimony regarding other positions is reference to the DOT in identifying alternative work that an individual with Plaintiff's RFC could perform.  An ALJ may take administrative notice of any reliable job information, including information provided by a VE.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir.1995).  A VE's recognized expertise provides the necessary foundation for his or her testimony.  *Id.*

Further, Plaintiff's attempt to extrapolate his limitation of occasional overhead reaching to the general "reaching" category identified in the DOT is unsupported.  As expressed in the hypothetical presented to the VE, Plaintiff's reaching limitation applied solely to overhead

reaching, but he had no other reaching limitations. Based on such a limitation, Plaintiff presumably could reach on a frequent or constant basis in all directions except overhead. Accordingly, substantial evidence supports the ALJ's step-five finding that Plaintiff could perform other work. *Moore v. Apfel*, 216 F.3d 864, 869-870 (9th Cir. 2000) (vocational expert testimony may constitute substantial evidence to support a denial of benefits).

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff Anthony Espinosa.

IT IS SO ORDERED.

Dated: **April 21, 2008**          **/s/ Gary S. Austin**
                                            UNITED STATES MAGISTRATE JUDGE